UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ALAN WILLIAM BURK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY BERRYHILL ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Case No. 3:17-CV-00870-MGG |

## OPINION AND ORDER

Plaintiff Alan William Burk seeks judicial review of the Social Security Acting Commissioner's decision denying his application for Title XVI supplemental security income ("SSI") as allowed under 42 U.S.C. § 405(g). This Court may enter a ruling in this matter based on parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B); 42 U.S.C. § 405(g); [DE 14]. For the reasons below, the Court affirms the decision of the Acting Commissioner of the Social Security Administration.

I.  **OVERVIEW OF THE CASE**

Burk alleges an onset of disability on May 6, 2014, which was caused by nerve damage to his lower back, thyroid blockage of his vocal box and airway, difficulty breathing, lower back pain, and ankle stiffness. [DE 15 at 2]. On the date of the alleged onset of his disability, Burk was a fifty-two-year-old man, which is defined as an individual closely approaching advanced age. 20 C.F.R. § 416.963. He completed the

"second year of high school," did not earn his G.E.D., and had not worked anywhere since 2001. [DE 10 at 46].

Burk's application for SSI on May 6, 2014, was denied initially and upon reconsideration. Following a video hearing on October 12, 2016, the Administrative Law Judge ("ALJ") issued a decision affirming the Social Security Administration's ("SSA") denial of benefits. The ALJ found that Burk has no past relevant work. [*Id.* at 23]. However, the ALJ found that Burk has the residual functional capacity ("RFC") to perform light work as defined by the regulations with some limitations [*Id.* 19]. The ALJ also found that Burk has the ability to meet the requirements for employment as an office helper, label coder, and cafeteria attendant as those jobs are defined by the Dictionary of Occupational Titles [*Id.* at 24]. Based upon these findings, the ALJ denied Burk's claims for benefits.

Other facts will be included as necessary.

## II. DISABILITY STANDARD

The Acting Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act: (1) whether the claimant is doing substantial gainful employment; (2) consideration of the medical severity of the claimants impairments; (3) whether the claimant's impairment meets or equals one of the listings in Appendix 1 to Subpart P of Part 404; (4) assessment of the claimant's RFC and whether he can perform his past relevant work; and (5) whether the claimant is capable of making an adjustment to other work. 20 C.F.R. § 416.920; *see also Kastner v.*

*Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III. STANDARD OF REVIEW

This Court has authority to review the Acting Commissioner's decision under 42 U.S.C. § 405(g). However, this Court's role in the judicial review of Social Security Administration cases is limited, and it is not permitted to reweigh the facts or evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court must give deference to the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (*citing Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened where the ALJ's findings contain error of fact or logic, or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Moreover, the ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the

evidence to her conclusions, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010), the ALJ must at least provide a glimpse into the reasoning behind her analysis and the decision to deny benefits. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). The ALJ's decision must reflect that he built a "logical bridge from the evidence to his conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

A court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgement for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th. Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th. Cir. 2001).

IV. **ANALYSIS**

Following the hearing, the ALJ issued a written decision, based upon the five-step disability evaluation process prescribed by the SSA's regulations[1], finding that

---

[1] 20 C.F.R. § 416.920.

Burk was not disabled and denying him disability benefits. At Step One of the ALJ's analysis, he determined that Burk had not engaged in substantial gainful activity since the alleged disability onset date, May 6, 2014. [DE 10 at 17]. At Step Two, the ALJ noted that Burk had the following severe impairments: (1) status post thyroidectomy; (2) laryngeal carcinoma; (3) obesity; (4) degenerative disc disease in the lumbar spine; (5) obstructive sleep apnea; and (6) hypertension. [*Id.* at 18]. At Step Three of the evaluation, the ALJ concluded that Burk's impairments did not meet or medically equal the severity of any of the listed impairments. [*Id.*].

Before proceeding to Step Four, the ALJ analyzed Burk's RFC and concluded that Burk retained the ability to perform light work with some limitations. Based on this RFC, the ALJ found that Burk had no past relevant work, at Step Four. [*Id.* at 23]. At Step Five, however, the ALJ found that, in consideration of Burk's age, education, work experience, and RFC, Burk was able to perform a significant number of jobs that existed within the national economy. [*Id.* at 23]. Based upon these findings, the ALJ concluded that Burk had not been under a disability as defined by the SSA.

Burk now argues that the ALJ's RFC assessment was unsupported by substantial evidence, with respect to the following: (1) the ALJ failed to build a logical bridge between the evidence and his assessed RFC; (2) the ALJ did not attain a medical opinion to which he could afford significant weight; and (3) the ALJ did not afford appropriate weight to the opinion of a treating physician. The Court will consider each issue raised.

### A. ALJ Did Build a Logical Bridge Between the Evidence and the RFC

If a person is found to be disabled at Step Three, the ALJ will make a finding as to the claimant's RFC before moving on to Step Four. *See* 20 C.F.R. § 416.920(e); *see also* 20 C.F.R. § 416.945. The RFC is an administrative assessment of the claimant's impairments, and any related symptoms, that affect what the claimant can do in a work setting. Specifically, the RFC is the most that the claimant can still do despite his or her limitations, based upon all the relevant evidence and the claimant's medical record. 20 C.F.R. § 416.945(a)(1). All impairments are taken into consideration, at this point in the process, not just those that have been previously determined to be severe. 20 C.F.R. §416.945(a)(2). In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. § 416.945(a)(3). However, the claimant retains the burden to provide the ALJ with medical evidence showing how his impairments affect his functioning. *Id.*

In this case, the ALJ found:

> [a]fter careful consideration of the entire record . . . [Burk] has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, and crouch; speaking limited to occasionally; should never be exposed to unprotected heights or moving mechanical parts; and no more than occasional exposure to dusts, odors, fumes, and pulmonary irritants.

[DE 10 at 19]. Burk argues that the ALJ's RFC finding is not supported by substantial evidence because the ALJ did not accord strong weight to any medical source regarding Burk's physical RFC determination. [DE 15 at 5]. In support, Burk cites *Terry v. Astrue,*

6

580 F.3d 471, 476 (7th Cir. 2009) to assert that the ALJ's RFC determination cannot be based upon substantial evidence when there is no opinion evidence in the record to support it. [DE 15 at 6]. *Terry* establishes that an ALJ's decision will be upheld and receive deference "if it is supported by substantial evidence," which is evidence that a "reasonable mind might accept as adequate to support a conclusion." *Id.* at 475. Unlike *Terry*, where the ALJ relied upon an unsigned medical report to make his RFC determination, the ALJ in this case relied upon properly signed medical reports from Burk's treating physician, four State Agency medical consultants, and the reports of two examining physicians. [DE 10 at 18-23].

To further support his claim, Burk argues that when the Court cannot determine how the ALJ came to his or her conclusion, remand is required, citing *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996). [*Id.* at 7]. *Rohan* stands for the proposition that the ALJ cannot ignore the reports of the consulting physicians or substitute his or her own independent medical finding in lieu of the testimony and medical evidence on the record. 98 F.3d at 970-71. This case can be distinguished from *Rohan* because the ALJ here did not base his decision on his own medical opinion. Rather, the ALJ articulated his assessment of medical evidence in the record sufficiently to enable this Court to follow the logical path of his reasoning.

Finally, Burk concludes that the ALJ "failed to build a logical bridge between the evidence and his conclusion." [*Id.* at 8]. The only support that Burk provides for this assertion is the fact that the ALJ did not afford any medical opinion significant weight on the most relevant issues, to wit: the ALJ only afforded "some weight" to the State

7

Agency medical consultants, and "little weight" to the opinion of treating physician, Dr. Motley. [*Id.* at 7].

The Seventh Circuit and this Court have repeatedly recognized that the ALJ is not required to rely entirely on a particular physician's opinion, nor must the ALJ choose between the opinions of any of the claimant's physicians. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007); *Hannah-Walker v. Colvin*, No. 2:12-cv-61-PRC. 2013 WL 5320664, at 10 (N.D. Ind. Sept. 23, 2013)). Further, determination of a claimant's RFC is a matter, not for the treating or examining physicians, but for the ALJ alone. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). The final responsibility for the RFC determination at the administrative law judge hearing remains exclusively with the ALJ. 20 C.F.R. §416.946(c).

The objective and opinion medical evidence that the ALJ considered in his decision included reports from several medical sources including various treatment reports and reports provided by Burk's treating physician, State Agency consultants, and a consultative examiner. [DE 10 at 19-22]. Burk's treating physician, Dr. Charles Motley provided a Physical RFC Assessment form dated February 15, 2016. [*Id.* at 505-07]. The State Agency medical consultants Drs. M. Brill and J.V. Corcoran, as well as Donna Unversaw, Ph.D. and Joelle Larsen, Ph.D. all contributed reports to the medical record the ALJ considered. Dr. Brill and Donna Unversaw provided a Disability Determination Explanation dated July 28, 2014, while Dr. Corcoran and Joelle Larsen provided a Disability Determination Explanation dated October 29, 2014. The ALJ also considered a consultative examination report prepared by Doctor Ralph Inabnit dated

July 21, 2014. The ALJ also referred to progress notes prepared by Dr. Rishi Sukhija dated September 1, 2016.

In his analysis, the ALJ documented Burk's complaints of pain over several years, referenced Burk's morbid obesity, and history of hypertension. [DE 10 at 20-21]. The ALJ found that although Burk's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged by Burk, his statements concerning the intensity, persistence, and limiting effects of these symptoms are inconsistent with the medical evidence in the record. [*Id.* at 21].

The ALJ substantiated this claim of inconsistency by citing to objective medical evidence, including a consultative examination report prepared by Dr. Ralph Inabnit on July 21, 2014, and follow-up progress notes from an examination of Burk by Dr. Rishi Sukhija on September 1, 2016. Dr. Inabnit's report shows that despite his complaints, Burk's "exams showed normal range of motion of the lumbar spine, 5/5 strength in the upper and lower extremities, normal sensory exam, and normal casual walk." [DE 10 at 307-08]. Similarly, Dr. Sukhija found during a follow-up after previous cardiac testing, that Burk's ambulation status was within normal limits. [*Id.* at 705]. The ALJ concluded that "[t]he objective physical record does not support the severity of alleged disabling symptoms and instead supports a finding that the claimant remains capable of performing a range of light work within the restrictions set forth herein." [*Id.* at 22].

Burk has failed to demonstrate that the ALJ's RFC determination was not logically connected to the medical evidence in the record, because despite his claims, the ALJ reviewed the medical record, which included a consultative examination, all of

9

which logically connects to the ALJ's conclusion. The ALJ complied with the regulatory requirements for determining Burk's RFC, and the Court can trace the logical path from the evidence to the ALJ's assessed RFC. Therefore, the RFC is supported by substantial evidence.

B. No Additional Consultative Examination Was Required

Burk next argues the ALJ was required to order an additional consultative examination, because the ALJ did not give great weight to either the treating physician, Dr. Motley, or to the State Agency physicians, Drs. Brill and Corcoran. Additionally, Burk contends that, without an additional examination, the ALJ could not have made an informed decision regarding Burk's RFC. However, the ALJ did not make his informed decision without a consultative examination. The medical record included a consultative examination performed by Dr. Inabnit in July 2014, as well as Progress Notes from a cardiac testing follow-up by Dr. Rishi Sukhija dated September 1, 2016..

When the evidence is insufficient to support an RFC decision, the ALJ has the option of ordering a consultative examination. 20 C.F.R. § 416.920b(b); *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011). A consultative examination is normally required if the evidence is ambiguous, if specialized medical evidence is required but missing from the record, or if there is a change in a condition but the current severity of the impairment is not established. 20 C.F.R. § 416.919a(b). However, the ALJ may, but is not required to, order additional consultative examinations if the claimant's medical evidence is insufficient to support an RFC decision. *See* 20 C.F.R. §§ 416.912(f); 416.917; *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007). Additionally, deference should be

10

given to an ALJ's decision about the sufficiency of available evidence and what measures, including consultative examinations, might be needed to fully develop the record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).

Here, Burk relies on *Clayborne v. Astrue*, No. 06 C 6380, 2007 WL 6123191 (N.D. Ill. Nov. 9, 20017), to support his contention that a consultative examination was required. The Court in *Clayborne* held that a consultative examination may be required if a conflict, inconsistency, ambiguity, or insufficiency in the evidence must be resolved. [*Id.* at *5]. The Court in *Clayborne* held that the ALJ was obligated to order a second consultative examination, because the examination that was performed did not provide the medical evidence needed to resolve the question of Clayborne's disability determination. [*Id.*] This case is distinguishable from *Clayborne* because the record before the ALJ is not plagued with the deficiency of medical evidence present in *Clayborne*. Here, the record the ALJ reviewed in making his decision, and about which the ALJ provided a detailed narrative, supported his conclusion regarding Burk's RFC. [DE 10 at 18-23].

In light of this evidence cited in the ALJ's decision, this case is more analogous to *Poyck* than *Clayborne*. In *Poyck*, the ALJ did not order an additional consultative examination because the record was replete with several mental and physical examination records. 414 F. App'x at 861. Similarly here, as detailed above, the ALJ had access to substantial evidence regarding Burk's physical impairments making it reasonable for the ALJ not to order an additional consultative examination. *See also Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (indicating that no medical record is

ever complete because "one may always obtain another medical examination, seek the views of one more consultant . . . and so on," yet the ALJ still needs to make a decision). Additionally, the ALJ reviewed, and relied upon in part, the report from a consultative examination conducted by Dr. Inabnit in July 2014. [*See* DE 10 at 21-22].

Consequently, the ALJ's decision not to order additional consultative examinations was reasonable and his physical RFC determination was supported by substantial evidence.

### C. The ALJ Properly Considered the Treating Physician's Opinion.

Burk's final argument is that the ALJ's physical RFC determination is not supported by substantial evidence because the ALJ failed to follow the treating physician rule by only partially accepting the opinion of Burk's treating physician, Charles Motley, M.D. Specifically, Burk argues that the ALJ erred by only affording little weight to Dr. Motley's opinion concerning Burk's physical limitations, which allegedly limit his ability to work.

More weight should be given to the opinion of a treating source because they are more familiar with the claimant's conditions and circumstances. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Additionally, the opinion of the treating physician will be given controlling weight if it is not inconsistent with the medical record as a whole. 20 C.F.R. § 404.1527(c)(2). The ALJ can reject an examining source's opinion if his reasons for discounting the opinion are supported with substantial evidence. *Id.* When a treating source opinion is not given controlling weight, the ALJ must consider the length of treatment, nature and extent of the treatment relationship, supportability of

12

the opinion, consistency with the evidence of record, and any other factors that support the opinion. 20 C.F.R. § 404.1527(c).

In a Physical RFC Assessment dated February 15, 2016, Dr. Motley opined that Burk is limited to standing 10-15 minutes at one time, sitting upright 20 minutes at one time, is unable to lift and/or carry during an 8 hour workday, and his impairments require him to lie down during the day. [DE 10 at 506-07]. The ALJ indicated that he gave "little weight" to the opinion of Dr. Motley related to the RFC, because "his statement appear[s] extreme" based upon the other objective and opinion evidence in the record. [*Id.* at 22].

In support, the ALJ compared Dr. Motely's opinion to that of the physical consultative examination performed by Dr. Ralph Inabnit. The ALJ noted that during Dr. Inabnit's July 2014 examination of Burk, he found that Burk's range of motion of the spine and extremities was normal. [*Id.* at 305-06]. The ALJ also referenced, Dr. Inabnit's conclusion that Burk's physical exam was near normal, and, although Burk uses a cane, he walked into the office for his examination "without the use of the cane at all." [*Id.* at 307]. The ALJ showed further inconsistency with Dr. Motely's opinion by citing a May 2016 examination report by Dr. Rishi Sukhija, in which the doctor states Burk's ambulation and appearance were within normal limits. [DE 10 at 705].

The ALJ further supported his determination by giving only some weight to the opinions of the State Agency medical consultants Drs. Brill and Corcoran. Drs. Brill and Corcoran opined that Burk was limited to performing medium work. In considering this evidence, the ALJ stated that Burk is more limited than determined by the State

13

Agency consultants based upon evidence received at the hearing level, including testimonial evidence and imaging of Burk's lumbar spine. [DE at 22]. The ALJ concluded that the State Agency consultants did not adequately consider Burk's subjective complaints; therefore, their opinions were afforded only some weight. [*Id.*]. This finding regarding the State Agency consultants shows that the ALJ considered all medical evidence in the record, including evidence that was contrary to his ultimate determination of Burk's RFC.

By citing to multiple pieces of objective evidence in the record, the ALJ effectively explained why he decided that Dr. Motley's opinion was not entitled to controlling weight. Despite reaching this conclusion, the ALJ did not completely disregard Dr. Motely's opinion. In fact, the ALJ incorporated limitations and exceptions consistent, to some extent, with Dr. Motley's opinion, into Burk's RFC.

Therefore, the ALJ supported his physical RFC determination with substantial evidence.

V. **CONCLUSION**

For the reasons stated above, this Court concludes that the ALJ did not fail to build a logical bridge between the evidence and his conclusions regrading Burk's RFC. The ALJ also did not err in failing to order another physical consultative examination, or in giving little weight to the opinion of Burk's treating physician, Dr. Motley. Therefore, the ALJ's RFC determination is supported by substantial evidence. Accordingly, Burk's appeal of the Social Security Administration's decision denying his application for Supplemental Security Income is **DENIED**. The Acting Commissioner's

decision is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgement in favor of the Acting Commissioner.

**SO ORDERED**

Dated this 22nd day of October 2018.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge